IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT JOE WARREN,

    Defendant.

Case No. 25-CR-159-JFH

## OPINION AND ORDER

Before the Court is an Objection [Dkt. No. 34] filed by Defendant Robert Joe Warren ("Defendant") to the Report and Recommendation ("R&R") [Dkt. No. 30] of United States Magistrate Judge Susan E. Huntsman. The R&R recommends denying Defendant's Motion to Suppress Illegally Obtained Evidence and Brief in Support ("Motion to Suppress") [Dkt. No. 18]. Dkt. No. 30. The United States of America ("Government") filed a Response to Defendant's Objection. Dkt. No. 40. For the following reasons, Defendant's Objection [Dkt. No. 34] is OVERRULED, the R&R [Dkt. No. 30] is ACCEPTED AND ADOPTED by the Court, and Defendant's Motion to Suppress [Dkt. No. 18] is DENIED.

## BACKGROUND

### I. Procedural Background

On May 5, 2025, Defendant was charged by indictment with one count of Felon in Possession of a Firearm and Ammunition. Dkt. No. 2. Specifically, the indictment alleges that on November 30, 2024, Defendant, knowing he had previously been convicted of eleven (11) prior felonies, knowingly possessed a Colt, Model Agent, .38 caliber revolver and twenty-one (21) rounds of ammunition. *Id*. at 1-2. Defendant is set for trial on the Court's November 17, 2025 jury trial docket. Dkt. No. 33.

## II. Factual Background

Defendant does not make any specific objections to the factual findings in the R&R. Therefore, the Court incorporates the factual findings set forth in the R&R, and considers the facts set forth in the briefing, exhibits, and hearing transcript, to find the following facts.

On November 30, 2024, Officers Louviere and Donsife of the Sand Springs Police Department responded to a report of larceny at a Walmart Supercenter located in Sand Springs, Oklahoma. Dkt. No. 30 at 2; Dkt. No. 35 at 5. A Walmart asset protection officer reported that she witnessed Defendant concealing hardware items underneath his backpack in the shopping cart. *Id*. At self-checkout, the asset protection officer observed Defendant pay for food items but not pay for the hardware items under his backpack. Dkt. No. 35 at 5. Officer Louviere testified that he regularly reported to larceny calls at this Walmart location and that he considers the Walmart asset protection staff to be a trustworthy and reliable source. Dkt. No. 39 at 8:14-24.

Officer Louviere reported first to the scene and made contact with Defendant in the loss prevention office inside Walmart. Dkt. No. 30 at 3; Dkt. No. 34 at 5. Defendant was seated on a bench inside the office and was visibly upset. Dkt. No. 30 at 3. Officer Louviere placed Defendant's backpack on a separate bench a few feet away from where Defendant sat. *Id*. He then instructed Defendant to stand up and place his hands on the wall so that he could pat him down. Dkt. No. 30 at 3; Dkt. No. 35 at 5. During the pat down, Defendant periodically took his hands off the wall, reaching toward his pockets and his head. Dkt. No. 30 at 3; Dkt. No. 35 at 6. Throughout the pat down, Defendant cried and made statements about not wanting to go to jail. *Id*. Officer Louviere continued instructing Defendant to keep his hands on the wall and began to search Defendant's jacket and outer clothing. *Id*. At this point, Officer Donsife entered the room. Dkt. No. 30 at 3. As Officer Louviere began to search Defendant's left pants pocket, Defendant

again removed his hand from the wall and reached for his pocket. *Id*. at 4. Officer Louviere grabbed Defendant's hand and placed it back on the wall, but again, Defendant removed his hand and bent forward. *Id*. Defendant was then placed in handcuffs behind his back. *Id*.; Dkt. No. 34 at 6.

Officer Louviere then instructed Defendant to stand up straight so that he could search his left pants pocket to "figure out what's in it." Dkt. No. 30 at 4. Defendant continued to resist, crying and attempting to turn around and sit down. *Id*. Officer Louviere forced Defendant's face down and away with his hand and the officers together stood him back up. *Id*. Officer Louviere then removed what was identified as methamphetamine from Defendant's pocket. Dkt. No. 30 at 5-6; Dkt. No. 34 at 6.

Officer Louviere then continued his search of Defendant's person and Defendant continued crying out in an emotional state. *Id*. The officers made several statements, seemingly in an attempt to calm Defendant down, insinuating that whether or not he was going to jail was dependent on his compliance and behavior. *Id*. For example, at one point Officer Louviere stated, "It could still be a ticket, could you calm the fuck down?" Dkt. No. 30 at 5.

After completing the search of his person, Officer Louviere instructed Defendant to turn around and sit back down on the bench. Dkt. No. 30 at 5; Dkt. No. 34 at 7. Still handcuffed, Defendant complied. Dkt. No. 30 at 5. Officer Louviere then asked Defendant if he had anything illegal in his backpack, which was still placed on another bench a few feet away. *Id*. Defendant began crying again in another emotional outburst. *Id*. Officer Louviere then began to search Defendant's backpack. *Id*. While this was happening, Officer Donsife asked Defendant to provide his full name and date of birth. Dkt. No. 30 at 6. Officer Louviere chimed in that Defendant had "one chance" to give the correct name and date of birth or he would "go to jail no matter what."

*Id*. Officer Louviere removed items from Defendant's backpack and asked Defendant to identify certain things, such as a bag of tobacco. *Id*. Officer Louviere finally removed a black zipper bag from the backpack's main compartment. *Id*. In this bag there contained another bag, which contained the loaded firearm at issue. Dkt. No. 30 at 6.

Defendant, again in visible distress, stated that he was "going to jail," Officer Louviere responded, "hell yeah you're going to jail, you're a convicted felon in possession of a firearm." *Id*. A moment later, Officer Donsife indicated that they should get Defendant to the squad car. *Id*. After placing Defendant in the squad car, the officers returned to the Walmart asset protection office and Officer Louviere again looked through Defendant's backpack ultimately replacing the items in the backpack and noting that they could look at these items "in a little bit." *Id*. At no point during the search of the backpack did the officers document or otherwise make a record of what was in the backpack. Dkt. No. 30 at 7. Eventually, Officer Louviere placed the backpack in the trunk of his squad car and drove Defendant to the police station. *Id*.

At the evidentiary hearing, Officer Louviere testified that his search of Defendant's backpack was an inventory search. Dkt. No. 39 at 18:9-11. Officer Louviere explained that inventory searches were a standard procedure of the Sand Springs Police Department for the purpose of cataloging all personal items of the individual going to jail. *Id*. at 18:14-17; 19:19-21. He further explained that the inventory search helped to prevent "any claims of lost property or stolen property by identifying potentially high-value items or items of importance and documenting said items." Dkt. No. 39 at 19:6-8. Officer Louviere testified that Defendant's personal property was placed into a locker at the police station for safekeeping, while other items, presumably the methamphetamine, firearm, and ammunition, were taken into evidence. *Id*. at 19:16-18.

## AUTHORITY AND ANALYSIS

### I. Standard

When a party objects to a report and recommendation, the Court is statutorily required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id*.

Defendant raises three (3) objections to the R&R. First, Defendant objects to the Magistrate Judge's finding that Defendant was arrested prior to the discovery of the firearm. Dkt. No. 34 at 5. Next, Defendant objects to the Magistrate Judge's conclusion that the firearm would have been inevitably found in an inventory of Defendant's property. *Id*. Finally, Defendant objects to the Magistrate Judge's conclusion that the Fourth Amendment does not incorporate an in-the-presence rule for warrantless arrests on misdemeanor offenses. *Id*. The Court will make de novo determinations as to each of these issues below.

### I. Defendant's Arrest

Defendant first objects to the Magistrate Judge's finding that he was lawfully arrested prior to the discovery of the firearm. Dkt. No. 34 at 10. Specifically, Defendant argues that the nature of Defendant's seizure was not an arrest, but merely a detention. *Id*. at 15. In support of this argument, Defendant points to statements made by the officers during the encounter that were inconsistent with an arrest. *Id*. at 15-16. Because Defendant contends that no arrest occurred, Defendant argues that officers were limited to the plain feel exception which, Defendant asserts, would have precluded the discovery of the methamphetamine. *Id*. at 19-20.

"An investigative detention is a seizure within the meaning of the Fourth Amendment but, unlike an arrest, it need not be supported by probable cause." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (quotation omitted). Conversely, "[a]n arrest is distinguished by the involuntary, highly intrusive nature of the encounter." *Id*. (quotations and citations omitted). "Whether an investigative detention has evolved into an arrest is always a case-specific inquiry, but it has been clear for some time that the use of handcuffs generally converts a detention into an arrest." *Manzanares v. Higdon*, 575 F.3d 1135, 1150 (10th Cir. 2009); *see also id*. (detention in a squad car while handcuffed was an arrest, not an investigative detention).

"A police officer may arrest a person without a warrant if he [or she] has probable cause to believe that person committed a crime." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). "Probable cause is a concept 'incapable of [a] precise definition or quantification into percentages.'" *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1220 (10th Cir. 2020) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). However, the Supreme Court and the Tenth Circuit have described that an officer has probable cause to make a warrantless arrest if the facts and events known to the officer at the time of the arrest would be sufficient for an objectively reasonable police officer familiar with those facts and events to believe with "substantial probability[,] as opposed to a bare suspicion," that an offense has been or is being committed. *Id;* s*ee also District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). This is "not a high bar" and requires only "the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Hinkle*, 962 F.3d at 1220 (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). Officers may rely on the totality of the facts available to them in establishing probable cause. *See id.* at 1221.

First, the Court finds that the officers had probable cause for Defendant's arrest. A Walmart asset protection officer reported that Defendant was seen concealing items under his backpack and did not pay for those items while checking out. The officers testified that they regularly respond to reports of larceny at this particular Walmart location and consider the Walmart asset protection staff to be a trustworthy and reliable source. Based on the facts and events known to the officers at the time, the Court finds that an objectively reasonable law enforcement officer would have had sufficient information to believe with substantial probability that a crime had occurred.

The Court also finds that an arrest indeed occurred. Defendant was placed in a small Walmart asset protection office and was not free to leave. Two officers directed and controlled Defendant's movements—using both verbal commands and physical authority. Defendant was placed in handcuffs. The methamphetamine was discovered after Defendant was handcuffed.

The nature of this interaction was involuntary and highly intrusive. A reasonable person in Defendant's position would understand that, based upon the conduct of the officers, he was not free to leave. Indeed, Defendant seemed to understand the seriousness of the interaction based upon his constant questioning about going to jail. The handcuffs further tip the scale toward an arrest. While the officers made comments during the interaction that Defendant "may" not go to jail or that he "may" only be issued a citation, when weighed against the actions of the officers, the Court finds that an arrest occurred.

Defendant argues that the officers' intent is relevant to this inquiry because they made their intent known to Defendant, citing *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988). Dkt. No. 34 at 11-12. However, the Court finds that the officers' statements regarding whether or not Defendant would go to jail were vague and did not specifically indicate an intention one way or

the other.  Regardless, as stated above, when weighed against the officers' conduct, the Court finds that an arrest occurred.

The Court is also not persuaded by Defendant's citations to *United States v. Ward*, 682 F.2d 876, 880 (10th Cir. 1982) and *Knowles v. Iowa*, 525 U.S. 113 (1998) as these cases are easily distinguishable from the present case.  In *Ward*, the officers did not exert any authority or control over the defendant, and the defendant was not handcuffed.  For these reasons, the *Ward* Court found that the conduct of the officers did not rise to the level of an arrest and, therefore, probable cause to arrest alone was not sufficient to allow for a search incident to lawful arrest.  *Ward*, 682 F.2d at 880.  In *Knowles*, the Court found that because officers issued the defendant a citation rather than arrest him, probable cause to arrest alone was not sufficient to allow for a search incident to lawful arrest.[1]  *Knowles*, 525 U.S. at 114.  Defendant was not issued a citation and the Court has found that the officers' conduct—including exerting authority and control over Defendant and handcuffing him—constituted an arrest under the circumstances.  This argument also fails.

For the above stated reasons, the Court finds that an arrest occurred and, therefore, the officers lawfully discovered the methamphetamine in a search incident to lawful arrest. Defendant's first objection is overruled.

## II.     Inevitable Discovery of the Firearm

Next, Defendant objects to the Magistrate Judge's finding that the discovery of the firearm is admissible under the inevitable discovery doctrine.

---

[1] Defendant also cites to *Martinez v. Carr*, 479 F.3d 1292 (10th Cir. 2007) with similar facts and holding.  For the reasons cited regarding *Knowles*, the Court is also not persuaded by *Martinez*.

Under the inevitable-discovery exception, the exclusionary rule does not apply if the government can prove by a preponderance that "the evidence inevitably would have been discovered by lawful means." *United States v. Braxton*, 61 F.4th 830, 833 (10th Cir. 2023) (quoting *United States v. Neugin*, 958 F.3d 924, 931 (10th Cir. 2020)). "The government possesses the burden of proving by a preponderance of the evidence that the evidence at issue would have been discovered without the Fourth Amendment violation." *United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005). For the inevitable discovery exception to apply, there must be a "lawful police investigation [that] inevitably would have discovered" the evidence in question. *United States v. Owens*, 782 F.2d 146, 152 (10th Cir. 1986); *see* 6 LaFave, supra § 11.4(a), at 371-72 ("Circumstances justifying application of the 'inevitable discovery' rule are most likely to be present if these investigative procedures were already in progress prior to the discovery via illegal means," or "where the circumstances are such that, pursuant to some standardized procedures or established routine a certain evidence-revealing event would definitely have occurred later.").

Officer Louviere testified that the Sand Springs Police Department has a procedure of inventorying the personal belongings of all persons being taken to jail. The Court has found that Defendant was arrested prior to the discovery of the firearm and the record clearly indicates that he was taken to jail. Pursuant to Sand Springs Police Department procedures, Defendant's personal items, including his backpack, would have been inventoried once Defendant was taken to jail. Therefore, the Court finds that the firearm and ammunition in Defendant's backpack would have inevitably been discovered during an inventory search. For these reasons, Defendant's objection here is overruled.

### III.   In-The-Presence Rule

Finally, Defendant objects to the Magistrate Judge's finding that the in-the-presence rule does not apply. Specifically, Defendant argued in his Motion to Suppress that the Fourth Amendment does not allow a warrantless arrest for a misdemeanor outside the presence of the officer. Dkt. No. 18 at 5. In his Objection, Defendant concedes that neither the Tenth Circuit nor the United States Supreme Court have definitively answered the question of whether the common law requirement that warrantless misdemeanor arrests be made only when the violation occurs in the presence of a law enforcement officer applies today under the Fourth Amendment. Dkt. No. 34 at 25. However, Defendant cites to a two-justice statement in a recent denial of certiorari which invited lower courts to further consider the applicability of the in-the-presence rule. *Id.* (citing *Gonzalez v. United States*, 145 S.Ct. 529, 529 (2025)). Defendant argues that the Magistrate Judge erred by "fail[ing] to give the question further consideration." *Id.*

The Court disagrees with Defendant's assessment. Although Defendant may not agree with the Magistrate Judge's findings, this Court finds that the Magistrate Judge fully considered the applicability of the rule, reviewing and evaluating persuasive case law. Dkt. No. 30 at 13-15. This Court, in its de novo review, also concurs with the Magistrate Judge that there exists no binding Tenth Circuit case law holding that the in-the-presence rule applies. For these reasons, Defendant's final objection is overruled.

### CONCLUSION

IT IS THEREFORE ORDERED THAT Defendant's Objection [Dkt. No. 34] is OVERRULED. The Court ACCEPTS AND ADOPTS the Report and Recommendation [Dkt. No. 30] as the order of this Court and Defendant's Motion to Suppress [Dkt. No. 18] is DENIED.

Dated this 24th day of October 2025.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE